THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| REX - REAL ESTATE EXCHANGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZILLOW, INC., et al., <br><br> Defendants. | Case No. 2:21-CV-00312-TSZ <br><br> **DECLARATION OF TERESA THOMAS** |

I, Teresa Thomas, declare as follows:

1. I am the Product Manager for the Search Experience Team at Zillow Group, Inc. and have been for the last two years. Prior to joining Zillow Group, Inc. I held positions at Outreach.io, Microsoft, and Red Hat.

2. The matters set forth herein are based on my own personal knowledge except where otherwise stated, and in those instances the matters set forth herein are based on information and belief. If called as a witness, I could and would testify competently to the matters set forth herein.

3. At Zillow I am responsible for building experiences that help people discover their dream home and navigate the incredibly complex process of making the biggest purchase

- 1 -

of their lives. Specifically, I am responsible for our users' search experiences on Zillow.com. The "search experience" encompasses the many ways in which users interact with Zillow's website and mobile applications, including how they search for property listings on Zillow, and the way those search results are displayed. Running searches for property listings is one of the primary ways in which users of Zillow interact with the website and its mobile applications.[1] For this reason, a critical part of my role is to support Zillow's efforts to constantly improve the search experience. Some of my specific responsibilities include identifying new product features relating to the search experience, determining the design of those product features, working with the development team to execute on those designs, and testing the features.

4. In or about May 2019, I was enlisted in Zillow's effort to switch from obtaining property listings via syndication feeds from individual local Multiple Listing Services ("MLSs"), and individual brokers and brokerages, to more reliable, comprehensive, and complete Internet Data Exchange ("IDX") feeds. This was a large, company-wide project, with input from many different teams. I was brought in to specifically address the implications for the way in which Zillow displays property listings in relation to certain terms or rules that would be required by at least some of the MLSs in order to obtain the IDX feeds (the "MLS Rules").

5. The MLS Rules associated with obtaining IDX feeds include a number of display requirements—meaning what must appear in a listing when it is displayed on a website or mobile application. These could include logos for the MLS, the listing agent, and the MLS number for that agent. One of these requirements, which I understand is at issue in this lawsuit, relates to the separate display of search results by data source (i.e., whether the listing comes from an IDX feed or MLS or from a different source)—what is referred to as the "no-comingling rule." This is an optional display rule—meaning it is enacted, or not, at the option

---

[1] This is the primary way that users interact with Trulia's website and mobile applications as well.

of each local MLS. As I describe below, my work—and that of my team—was focused on the preferred way for Zillow to implement the no-comingling rule on Zillow's website. Others led similar work being done in this regard on the Zillow and Trulia Apps and on Trulia.com.

6. The local MLS Rules do not prescribe how MLS members implement the no-comingling rule. The rule itself contains no guidance whatsoever. Also, as I mentioned above and as I explain further below, the no-comingling rule is optional, meaning that not all MLSs have adopted it. As a result, how Zillow decided to implement the no-comingling rule, including whether it would implement it only in some locations or everywhere, was a decision that had to be made by Zillow itself, and not as a result of any MLS (or NAR[2]) requirements. Specifically, Zillow had to decide (a) how it would display search results that included listings from MLS and non-MLS sources, *i.e.*, whether to use tabs[3], radio buttons[4], filters, or other visual means to differentiate the different types of listings; (b) how prominent each tab would appear, *i.e.*, its color and size; and (c) how each tab was described, *i.e.*, "Agent listings" or "Other listings." In making these various design decisions, Zillow considered many options for how it would implement the no-comingling rule, and ultimately chose a design that, within the timeframe and resources that were available for the project, I believe provides users with the best search experience that could be developed.

7. On Zillow's website and mobile applications, a search is one of the principal ways users identify property listings in which they may be interested. A search is the primary access point for the vast majority of Zillow's users. For example, users may want to see all 3-bedroom, 2-bathroom homes with water views in Seattle. The Zillow search tools allow them to easily do that. It also allows them to search by other criteria, such as lot size, square

---

[2] The National Association of REALTORS® developed an IDX Policy and a set of Model Rules (collectively referred to as the "Model IDX Rules") from which many MLSs have derived their local MLS Rules.

[3] Tabs are a navigation element used in web design that allow users to easily access different areas of a website or different parts of an individual webpage.

[4] Radio buttons are typically used when there is a list of two or more options that are mutually exclusive, and the user must select only one option.

footage, and more. Set out below is a screen shot of the search box and some of the filters available to users on Zillow.com:



https://www.zillow.com/homes/Seattle,-WA_rb/ (screenshot taken April 27, 2021).

8. Search results are then displayed to users with the information arrayed in a way that allows them to easily navigate and explore the listings that meet their criteria:

- 4 -



https://www.zillow.com/homes/Seattle,-WA_rb/ (screenshot taken April 27, 2021).

9. There are other ways that users engage with Zillow's website and mobile applications, including by zooming in and out using the map view, which dynamically loads search results that are encompassed within the current scaled map view.

10. As part of its transition to IDX feeds, Zillow understood that it would have to comply with the rules governing the display of IDX data, as adopted or established by each local MLS. Some of the IDX rules are mandatory, while others are optional, and each local MLS makes its own decisions about its own rules. This meant that Zillow had to first determine which rules were enacted by each MLS and then how Zillow would implement those rules based on its own design decisions.

11. In order to determine what design work would be required to comply with each of the MLS Rules, we reviewed the rules of the top 100 MLSs. While some of the Model IDX Rules promulgated by NAR are mandatory, meaning each MLS that is affiliated with NAR has to enact that particular rule, other rules are optional. There are also MLSs—not associated with NAR and therefore not obligated to implement any NAR Model IDX Rules—that have their own unique set of rules. Although not required to do so, some of these MLS adopt rules that may follow all (or even some) of the Model IDX Rules.

12. As part of this process, we identified rules that mandated that specified

information be displayed in every listing from that MLS—for example, rules regarding attribution (*i.e.,* showing the MLS logo, MLS name, brokerage name, phone numbers, etc.). We then determined how these requirements would be incorporated into the way in which Zillow displays information on a listings page. The search experience teams, including my team which was focused on search results for Zillow's website (as accessed on desktop or mobile devices) as well as teams focused on the Zillow and Trulia Apps and Trulia.com, had to ensure, for example, that we were not crowding the page or making the display overly complicated or difficult for consumers to view and comprehend.

13. In order to assist in our compliance with the MLS Rules, and after we had addressed how we would display listings in accordance with these requirements, another team at Zillow created backend computer logic and tools to help automate the implementation of those rules in the listings relating to that particular MLS—known internally as our Rules Engine. Thus, for example, if the Northwest MLS requires display of a particular logo on all listings sourced from it, when a search is done and listings from that MLS are returned, our website will automatically display that particular logo.

14. Turning specifically to the no-comingling rule, the search experience team spent considerable time contemplating and prototyping the design implementation that best met our users' needs. Prior to the conversion to the IDX feeds, Zillow had displayed all relevant search listings in a single table or results list. Under the MLS Rules, certain MLSs require that the data, for that particular MLS, be separated from listings received from other non-IDX or non-MLS sources, which means we cannot display listings received directly from the MLSs (through the IDX feed), together with listings such as For Sale By Owner or Auction, which may come from a different source. How we actually display these listings, however, was a decision to be made by Zillow alone.

15. Over a period of approximately 16 months, my team and I—as well as the other search experience teams—discussed a number of potential options for how to develop our own implementation of the no-comingling rule. The NAR Model IDX Rule 18.3.11 provides only

that: "Listings obtained through IDX feeds from Realtor® Association MLSs where the MLS participant holds participatory rights must be displayed separately from listings obtained from other sources."  It does not provide any additional information regarding how the listings must be displayed.  Accordingly, we considered a number of different approaches for displaying differing listings separately, including: (a) showing MLS and non-MLS listings on separate, sequential search results pages (*e.g.*, even numbered results pages would be from one listing source and odd numbered results pages would be from another); (b) adding a filter option to switch between MLS and non-MLS listings; and (c) displaying search results differently based on the market and whether the local MLS had enacted the no-comingling rule.

16.     None of these options, however, were viable, either because of complexity, likely user confusion, or engineering effort.  Specifically, with respect to the last option—displaying search results differently on a market by market basis depending on whether the local MLS(s) had adopted the no-comingling rule—we found that this raised both technical design challenges and user experience concerns.  Among other challenges, we would have had to design a display that would seamlessly and dynamically adjust the search results as consumers moved around the map displayed on Zillow's website and mobile applications.  The ability for consumers to be able to manipulate Zillow's map of listings and to move around to different areas is essential for a user's experience on the website.  However, this ability to zoom in and out and navigate the map means that listings from multiple MLSs, which may have different co-mingling rules, could appear in the same map view.  The specific issue was that we would have had to build new technology that would dynamically include or exclude results from non-MLS sources based on the searches performed by the user.  The ability to pan and zoom in or out of the map made any potential solution more complex in that, with every pan or zoom there would need to be a recalculation of whether the results displayed included listings from MLSs that had adopted a no-comingling rule.  Given the technical complexity, this option was perceived to be too complicated, too expensive, and untenable in the project's timeframe.  There was also the concern that, from a user experience perspective,

having the display switch from a single tab to two-tab display (and potentially back again) would have been jarring and confusing to consumers.

17. For these reasons, we decided that the option that provided the best user experience within the scope of the project was to present the same two-tab display of search listings in all geographies, irrespective of whether the MLS Rules of a certain geographic location required the listings to be segregated.

18. Once we made the decision to apply the same rules in all geographies, we then needed to determine how best to visually display the separated results to consumers. From a design perspective, presenting a choice of A and B to a consumer can be accomplished in hundreds of different ways. For example, we could have used links, drop downs, toggles, filters, and other design approaches. After considering a number of different options, my team and I decided to use a toggle, or two-tab approach, to transition between MLS and non-MLS listings. As part of my search experience team's ongoing work, we are continuing to iterate on the two-tab approach in order to refine it to achieve that ideal user experience.

19. Once we made the decision to use the toggle approach, we then had to determine how we would label the toggles. We wanted to ensure that the labels we used were clear and comprehensible for users. Just as with the display of listings, there is nothing in the MLS Rules that prescribe how the listings must be labeled. For this reason, we sought to identify the labeling options that would provide the best user experience.

20. Although we considered using the labels "MLS Listings" and "Non-MLS Listings," we had historically found that those terms that have little meaning for most users. Additionally, given the fact that "MLS" is a registered trademark of the Canadian Real Estate Association, we had concerns about using such a label in areas that touched the Canadian border. Again, not wanting to create confusion for consumers, we decided that utilizing a system in which the labels for these tabs changed depending on locale would not be ideal.

21. We also considered a number of other labeling options, including: (1) "Agent listings" and "More listings"; (2) "Agent listings" and "Owner+ listings"; (3) "Agent listings"

and "Non-Agent listings"; (4) "Agent listings" and "Direct listings"; (5) "Agent listings" and "More properties"; (6) "Agent listings" and "Off-MLS listings"; (7) "Agent listings" and "Additional properties"; (8) "Agent listings" and "Only on AllListings"; and (9) "Agent listings" and "Non-MLS listings". We found that all of these options were too confusing or burdensome for consumers.

22.     Ultimately, after several iterations, and limited consumer testing, we settled on "Agent listings" and "Other listings" as shown below:



https://www.zillow.com/homes/Seattle,-WA_rb/ (screenshots taken April 27, 2021).

23.     In designing the toggle, we understood that part of our task would be to make consumers aware of the "Other listings" tab in the results page. Zillow wants all of its listings to be easily discoverable by our users and it was no different for the listings that are displayed in the "Other listings" tab. One solution we developed was a pop-up that called attention to the "Other listings" tab when a new consumer visited the website:



(screenshots from Zillow App taken April 26, 2021).

24. We also added a link to the FAQ which explained in a consumer-friendly way why there was now a second tab:



https://www.zillow.com/z/c/listings-quality/ (screenshot taken April 27, 2021).

25. And we created a FAQ page to further explain the New Search Toggle display:



https://zillow.zendesk.com/hc/en-us/articles/360056662414-New-Search-Toggle (screenshots taken April 27, 2021).

26. Additionally, where a search returns no listings on the "Agent listings" tab, our websites include a built-in logic to automatically switch the consumer to "Other listings."

27. In sum, and as I explained herein, Zillow's design teams were responsible for creating the implementation of the no-comingling rule on the Zillow platforms. My team and I were specifically focused on the Zillow.com website. We determined that listings would be separately displayed in two separate tabs and that users could easily toggle between the tabs. We determined that these two tabs would be used consistently in all geographies regardless of whether the local MLS had enacted the optional no-comingling rule. We also determined the size, location, color, and other design features of the two tabs, as well as the labels to use on the two tabs. All of these decisions were made based on my team's assessment of how to achieve the best possible user experience.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 28 day of April 2021, at Seattle, WA

*/s/ T. Thomas*
_____
Teresa Thomas